## LACORAZZA v. CANTALUPO.

(Circuit Court of Appeals, Second Circuit. January 13, 1914.)

### No. 97.

1. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—DANGER—NOTICE.

In an action for injuries to a servant by the explosion of a heater connected with a sprinkler apparatus, due to its being permitted to freeze, whether defendant had been notified of the danger, and of the necessity of keeping fire in the heater during freezing weather, *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

2. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—APPLIANCES—EXPLOSION—ACTIONABLE NEGLIGENCE.

In an action for injuries to a servant by the explosion of a heater connected with a sprinkler apparatus, evidence that the explosion was due to defendant's failure to keep a fire in the heater during freezing weather *held* to justify a finding of actionable negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. DAMAGES (§ 170*)—PERSONAL INJURIES—EVIDENCE.**

In an action for personal injuries, evidence as to the number and character of plaintiff's family was inadmissible, as bearing on the amount of his damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 496, 497; Dec. Dig. § 170.*]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a judgment of the District Court, Southern District of New York, in favor of defendant in error, who was plaintiff below. The action was brought to recover for personal injuries sustained in consequence of the explosion of a heater connected with a fire protection sprinkler apparatus located on premises occupied by defendant for the conduct of his business, Cantalupo being one of defendant's employés. The sprinkler apparatus was installed by the owner of the building with assent of Lacorazza, tenant of two floors, the latter agreeing to pay part of the cost of installation. The heater was included in the system for the purpose of preventing the freezing of water in the supply tank or the pipes, so that the system might be always efficient. If ice should once form to any extent, and thereafter fire was kindled in the heater, there was, of course, the possibility that the water, in pipes and heater below the ice pack, being unable to circulate, might be turned into steam and expanded sufficiently to cause an explosion. This was what happened on the day plaintiff was injured. In prior winters Lacorazza had a stove on this floor for heating the premises, but upon installation of the heater it was removed. Thereafter they could be warmed in cold weather only by lighting a fire in the heater. For three or four days preceding the accident, fire was so kindled in the morning, but it was allowed to go out at night.

W. L. O'Brion and Amos H. Stephens, both of New York City, for plaintiff in error.

Franklin Pierce, of New York City, for defendant in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The action was brought against two, defendants, Lacorazza and the Vogel Company, which installed the heater. The negligence specifically charged against the latter practically resolved itself into the single question whether or not the heater or pipes immediately connecting therewith had been provided with a safety valve. As to that question the testimony was conflicting; the jury found for the defendant company and that part of the case has not been brought here by writ of error.

[1] The plaintiff's theory as to negligence on the part of Lacorazza was this: The heater, with his entire approval, was placed on his premises, in that part of the building which he leased; they were occupied by himself and his employés. How they should be used was for him to prescribe. He had authority to direct or to allow his employés to kindle a fire in this heater.

There was testimony to the effect: That in cold weather the water in the supply tank and pipes therefrom might freeze. That the Vogel Company inspector, who came to examine the apparatus, four days before the accident told Lacorazza of this liability to freeze; indeed, the water had actually frozen when he got there. That he further told him that in such weather the fire should be kept going all the time, night as well as day, so as to prevent the formation of ice in the tank; that it was dangerous to allow ice to form in the tank. This testimony was contradicted, but it was for the jury to decide whether notice of the danger and of the necessity of keeping up the fire was given to Lacorazza; their verdict shows conclusively that they found such notice was given.

[2] The proof further shows that after the inspector's visit the fire was not kept up continuously; defendant gave no directions to his employés to keep it going; it was allowed to go out each night and was kindled anew each morning, no matter how cold the temperature was. Upon the proof as the jury found it, it might fairly be held that defendant was negligent in allowing the heater to be thus handled, and the jury's finding that Lacorazza did not do all that was reasonably prudent to make the use of this heater safe for his workmen working about there was a proper one. The court would not have been justified in withdrawing such a case from the jury.

The exception to refusal to nonsuit is overruled.

[3] The only other substantial question in the case is as to plaintiff's testimony as to his family. His counsel asked him: "Have you a family?" He began to answer, "I, my wife—" when he was at once interrupted by defendant's counsel, who objected that testimony as to his family was irrelevant and immaterial. If this were all—this statement that he had a wife—the matter would be unimportant; elsewhere in the record Agnes Cantalupo testified to disbursements that had been made for doctors, medicines, etc., and it appeared, without objection, that she was plaintiff's wife. Metropolitan Street Railway Co. v. Kennedy, 82 Fed. 158, 27 C. C. A. 136. But plaintiff's counsel was not satisfied; evidently he had not familiarized himself with the decisions of the federal courts, for in face of the objection, he insisted on a full answer to his question, arguing that having a family "bears in some respect on his ability to do." He convinced the trial judge, who overruled the objection, saying: "It bears on the question of injury to his earning power." Exception was duly reserved. The question was then answered, plaintiff stating that he had "a wife and seven children."

We do not see what bearing the possession of a wife and seven children has upon a man's "earning power"; but all question as to the admissibility of such testimony in the federal courts is foreclosed by the opinion of the Supreme Court in Penn. Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141. It was there held that in actions of this sort such testimony is improper, and should be excluded, and that it is reversible error to admit it over proper objection and exception. See, also, Baltimore, etc., R. Co. v. Camp, 81 Fed. 807, 26 C. C. A. 626; Ches. & Ohio R. R. v. Stojanowski, 191 Fed. 720, 112 C. C. A. 310; N. Y. Elec. Eq. Co. v. Blair, 79 Fed. 896, 25 C. C. A. 216.

We regret very much that we are constrained to reverse this judgment, because, in view of the injuries concededly received, the amount of the verdict seems entirely reasonable, and quite possibly the improper testimony did not operate to enlarge its amount; but unless this court is prepared to hold that it will not accept the rulings of the Supreme Court on questions of law, in cases precisely similar to these in which such rulings are made, we see nothing else to do except to reverse the judgment, because of this error in the admission of testimony.

Judgment reversed.